Filed 8/12/26  International Patients Network v. Truck Ins. Exchange CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| INTERNATIONAL PATIENTS NETWORK, INC., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> TRUCK INSURANCE EXCHANGE, <br><br> Defendant and Respondent. | B345024 <br><br> (Los Angeles County Super. Ct. No. 23STCV19281) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara Ann Meiers, Judge.  Affirmed.

Pick & Boydston and Brian D. Boydston for Plaintiffs and Appellants.

Horvitz & Levy, Mitchell C. Tilner, Steven S. Fleischman; Gordon Rees Scully Mansukhani, Michelle R. Bernard, and Steven R. Inouye for Defendant and Respondent.

————————————

International Patients Network, Inc. (IPN) and May and Tony Dow (collectively, plaintiffs) appeal from the grant of summary judgment in favor of insurance company Truck Insurance Exchange (Truck) on their causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. The trial court determined there was no triable issue that Truck did not breach plaintiffs' insurance policy by refusing to pay for independent counsel for plaintiffs' defense against a third-party cross-complaint, pursuant to Civil Code section 2860[1] and *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 (*Cumis*). The court determined Truck had a duty to defend plaintiffs because a possibility existed the cross-complaint could have been amended to allege claims and damages that the policy would cover. However, the court determined the cross-complaint was never amended to seek damages that would be covered by the policy, and thus no actual conflict of interest ever arose that triggered a duty by Truck to provide independent counsel for plaintiffs.

We agree that even if Truck owed a duty to defend plaintiffs in this circumstance, it had a duty to provide independent counsel only if there was an actual conflict of interest. As a matter of law, under the terms of the policy and based on the allegations of the cross-complaint, no such actual conflict existed. It is undisputed the fraud and Labor Code claims and damages alleged in the cross-complaint did not fall within the policy's coverage. Because there would be no coverage under the policy regardless of whether the cross-complainant prevailed on her claims, plaintiffs' and Truck's interests in

---

[1]	Undesignated statutory references are to the Civil Code.

2

defending against those claims were never in actual conflict. Without an actual conflict of interest, Truck was not obligated to provide plaintiffs with independent counsel and did not breach the policy by failing to comply with that duty. The fact that Truck reserved its rights on certain exclusions and limitations under the policy did not create a conflict of interest when there would be no coverage of the claims to begin with. Thus, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

As alleged in the complaint, IPN "facilitat[es] complex medical care in the United States for individuals located outside the United States, including in the Middle East." Tony Dow is "an officer and principal of IPN," and May Dow is a "principal of IPN."

The following material facts upon which Truck's motion for summary judgment was based and granted are undisputed:

A. *The Policy*

IPN, Tony, and May were identified as insureds in a commercial insurance policy issued by Truck.

Under the policy's general liability coverage, Truck agreed to indemnify insureds for damages on claims for "bodily injury," "property damage," and "personal and advertising injury" to which the policy applied. The policy defined "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from these at any time"; "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured"; and "personal injury" and

3

"advertising injury" collectively as injury, including consequential bodily injury, arising out of several specified offenses, including "[f]alse arrest, detention or imprisonment." The policy further provided Truck with "the right and duty to defend the insured against any 'suit' seeking those damages" and discretion to settle any such suit.

B.    *IPN Sues a Third Party, Who Cross-complains*

In January 2015, IPN sued its former employee Maissaa Mousa to recoup an advance it had paid her (the collection action).

In February 2015, Mousa filed a cross-complaint against IPN and the Dows. In July, Mousa filed an amended cross-complaint that alleged a cause of action against the Dows for fraud (by intentional misrepresentation, concealment, and making false promises without intent to perform) and a cause of action against IPN for violation of Labor Code provisions governing wages, overtime, and required breaks.

Mousa alleged the following facts: IPN offered her a job as a caregiver and patient assistant in Lebanon at a monthly salary of $1,730. Mousa would have the right to leave her employment at any time, and IPN would pay her return airfare to an unspecified destination. Mousa traveled to Lebanon to start work. IPN had promised her a room in Tony Dow's apartment, but upon arriving, Tony gave her only a living room sofa to sleep on.

Tony was nude at all times while in the apartment, he wanted her to sleep in his bed, and he sexually and emotionally harassed her throughout her stay in Lebanon. He treated Mousa like a slave, had a bad temper, and threatened her with violence if she disobeyed him. He also held her passport and would not

4

allow her to speak with her family, which caused her to feel like a hostage. The harassment caused her depression and anxiety. In addition, Mousa was forced to carry heavy objects, which caused her to suffer joint and back pain.

IPN failed to pay Mousa the agreed monthly salary even though she worked 16 hours a day, seven days a week, and was "on call" at all other times. IPN and the Dows also reneged on their promise to pay her expenses and provide her with health insurance.

Despite Mousa's allegations of sexual harassment, bodily injury (caused by carrying heavy objects), and false imprisonment, she did not plead a cause of action seeking damages related to these alleged injuries. (Tony told Truck this was because they were time-barred.)

After Mousa filed her amended cross-complaint, IPN and the Dows retained an attorney to defend themselves.

In January 2016, IPN and Tony Dow filed a separate action against Mousa for slander (the slander action), alleging she had defamed them by repeating to other persons the allegations contained in her cross-complaint in the collection action.

C.    *Truck Learns About Mousa's Cross-complaint, Agrees To Provide a Defense, and Appoints Counsel for Plaintiffs*

In September 2016, Mousa's counsel informed Truck about Mousa's cross-complaint against its insureds.[2]  After

_____

[2]      The policy imposed a duty on plaintiffs to promptly notify Truck of any claim or suit. The trial court noted in its summary judgment order that Truck appeared to waive any argument that plaintiffs failed to comply with this duty. Truck does not argue otherwise on appeal.

investigating the matter, in December 2016, Truck sent a letter to IPN agreeing to defend IPN against Mousa's cross-complaint subject to a reservation of rights.  A month later, Truck sent similar letters to the Dows.

In each letter, Truck acknowledged Mousa's allegations that she felt like a hostage and slave created a "potential for coverage" under the policy's definition of personal and advertising injury if a false imprisonment offense arose out of IPN's business.  Truck also acknowledged Mousa's allegations that she suffered joint and back pain from carrying heavy objects created a "potential for coverage" under the policy's definition of bodily injury.  However, Truck asserted Mousa's existing causes of action for fraud and Labor Code violations "do not meet the insuring agreement of the policy and are not covered" because they did not qualify under the policy's definitions of bodily injury, property damage, or personal and advertising injury.

Truck appointed three separate attorneys to represent IPN, Tony, and May, respectively, against Mousa's cross-complaint.  Truck informed IPN and the Dows they could engage their own attorneys at their own expense and that the appointed counsel would cooperate to the fullest extent possible with any selected counsel.  Truck emphasized that, regardless of whether plaintiffs engaged their own counsel, it would defend the action, at its expense, in accordance with the policy.

In February 2017, counsel retained by plaintiffs sent a letter to Truck "object[ing] to" and expressing "serious concerns with" Truck's appointment of counsel to defend IPN and the Dows against Mousa's cross-complaint.  Plaintiffs contended Truck's purported reservation of its right "to deny coverage for intentional conduct" triggered their right to independent counsel

6

paid for by Truck. In response, Truck maintained it owed no duty to provide independent counsel based on its denial of coverage for the fraud and Labor Code claims in the cross-complaint.

Throughout 2017, plaintiffs refused to allow appointed counsel to formally undertake their representation. A substitution of counsel form was filed making Truck's appointed counsel May's counsel of record, but Tony later asserted the substitution had not been authorized.

During the first half of 2018, plaintiffs continued to spurn appointed counsel's efforts to submit association of counsel forms so the attorneys could appear as counsel of record. Tony justified his refusal to permit appointed counsel to control the defense by citing his concern that Truck might try to settle the cross-complaint without requiring Mousa to retract her allegations, an outcome plaintiffs considered unacceptable. Tony was also dissatisfied with appointed counsel's purported failure to provide "case plans" to plaintiffs' satisfaction.

In September 2017, February 2018, and March 2018, Truck issued revised reservation of rights letters that reaffirmed Truck would defend IPN and the Dows against Mousa's cross-complaint and clarified that Truck would not rely on certain policy limitations and exclusions as coverage defenses.

In May 2018, the slander action went to trial, and the jury returned a verdict for IPN and Tony. The judgment was affirmed on appeal. Proceedings in the collection action were stayed until the appellate decision became final in February 2021.

In April 2021, the court in the collection action dismissed Mousa's cross-complaint on the ground of collateral estoppel but granted Mousa leave to amend. Mousa filed a second amended

cross-complaint that asserted a single cause of action for fraud. The court sustained demurrers to that pleading without leave to amend, and plaintiffs later prevailed on their claim against Mousa. Plaintiffs thus incurred no liability to Mousa in the collection action.

D.    *Plaintiffs Sue Truck for Failure To Pay for Independent Counsel*

In August 2023, plaintiffs filed their complaint in this case, alleging causes of action against Truck for breach of contract and breach of the implied covenant of good faith and fair dealing. Plaintiffs alleged Truck was obligated to pay for plaintiffs' chosen counsel who had defended plaintiffs against Mousa's cross-complaint in the collection action, but Truck refused to pay. Plaintiffs also alleged Truck's appointed counsel failed to provide an adequate defense, "badgered" plaintiffs to settle with Mousa on unacceptable terms, and "failed to perform their duties," all of which left plaintiffs "with no choice but to continue to defend themselves using their own money with their own lawyers." Plaintiffs sought damages of not less than $1.5 million, the amount they claimed to have paid their own counsel to defend against Mousa's cross-complaint, plus punitive damages for their bad faith cause of action.

In August 2024, Truck filed a motion for summary judgment or, in the alternative, summary adjudication of the separate causes of action and punitive damages claim. Truck argued plaintiffs could not prevail on their breach of contract cause of action because (1) Mousa's claims for fraud and Labor Code violations did not qualify as bodily injury, property damage, or personal and advertising injury and thus were not covered under the policy, and (2) despite allegations that could give rise

8

to potentially covered claims for sexual harassment, bodily injury, and personal injury, Mousa had not pleaded causes of actions seeking damages for such injuries. As a result, Truck asserted it did not have a duty to defend plaintiffs against Mousa's cross-complaint, and even if it had a duty to defend, it did not have a duty to provide independent counsel. Truck argued plaintiffs' inability to establish their breach of contract cause of action was fatal to their bad faith cause of action and punitive damages claim.

Plaintiffs opposed the motion. They did not dispute that Mousa never pleaded a cause of action seeking damages covered under the policy. Instead, they challenged Truck's position that a lack of covered claims in Mousa's cross-complaint meant Truck had no duty to defend or duty to provide independent counsel, and they argued Truck's reservation of rights to deny coverage for intentional conduct and employment-related claims triggered a conflict of interest giving rise to a right to independent counsel. Plaintiffs pointed to internal communications reflecting Truck employees' opinions that Truck's reservation of rights may have created these particular conflicts and thus entitled plaintiffs to independent counsel. For instance, a Truck representative wrote an internal claim note stating, "[I]t appears that insured might be entitled to cumis based on the reservation involving employee v. [independent contractor]."

In reply, Truck asserted the possibility that Mousa might amend her cross-complaint against IPN to add a covered claim did not trigger a duty to defend or provide independent counsel, and no actual conflict of interest ever arose. Truck argued its reservation of rights to deny coverage for intentional conduct and employment-related claims was not relevant because those

9

coverage limitations pertained only to claims falling within the policy and Mousa had not sought damages on such a claim.

The trial court granted summary judgment, noting no party claimed there remained a triable issue of material fact. The court concluded that, contrary to Truck's position, Truck had a duty to *defend* plaintiffs because Mousa's allegations created at least a "potential for coverage." But the court determined Truck had no obligation to *provide independent counsel* and thus did not breach its contract by failing to do so. The court explained independent counsel is required only if appointed counsel faces an actual conflict of interest and plaintiffs failed to establish such a conflict existed.[3] The court further explained Truck's internal communications did not establish a right to independent counsel, nor was such a right created merely because Truck defended plaintiffs under a reservation of rights.[4] Finally, the court concluded plaintiffs' bad faith cause of action and punitive

---

[3] Plaintiffs assert on appeal the trial court reached the conclusion that there was no such conflict of interest sua sponte. To the contrary, Truck argued in its summary judgment briefing that its reservation of rights did not create an actual conflict requiring independent counsel.

[4] As a separate independent ground for granting Truck's motion, the court determined as a matter of law Truck established plaintiffs materially breached the policy by failing to comply with their contractual duty to cooperate with Truck's defense. The court determined there was no triable issue that plaintiffs prevented Truck's appointed counsel from associating into the action and refused to cooperate with appointed counsel. The court concluded this material breach precluded plaintiffs from enforcing the contract and constituted a complete defense to their claim that Truck breached its contractual duty to defend.

10

damage claim failed because Truck complied with its express contractual duties.

The trial court entered judgment for Truck, and Plaintiffs timely appealed.

## DISCUSSION

A.  *Standard of Review*

" 'A motion for summary judgment or summary adjudication is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ' " (*Campbell v. FPI Management, Inc.* (2024) 98 Cal.App.5th 1151, 1161; see Code Civ. Proc., § 437c, subds. (c) & (f); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  " 'We apply a de novo standard of review to an order granting summary judgment when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy.' " *(Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390; accord, *Terrell v. State Farm General Ins. Co.* (2019) 40 Cal.App.5th 497, 502.)

B.  *Applicable Law*

A standard commercial general liability insurance policy imposes two major duties on the insurer.  (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 957.)  First, the standard policy imposes a duty to indemnify the insured for damages within coverage.  (*Ibid.*)  Second, it imposes a duty to defend the insured in any suit seeking damages for harm alleged within coverage.  (*Ibid.*)  The duty to defend is the broader of the two duties.  It applies to claims that are *potentially*

11

covered, based on facts alleged or otherwise disclosed, whereas the duty to indemnify applies only to claims that ultimately are *actually* covered. (*Swanson v. State Farm General Ins. Co.* (2013) 219 Cal.App.4th 1153, 1161-1162 (*Swanson*); see *Blue Ridge Ins. Co. v. Jacobsen* (2001) 25 Cal.4th 489, 497 ["An insurer has the right and broad duty to defend the insured against third party claims potentially within the policy's coverage."].) Thus, "the insurer must defend in some lawsuits where liability under the policy ultimately fails to materialize." (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 299 (*Montrose Chemical*).)

An insurer may provide a defense for the insured while reserving its right to later assert noncoverage defenses—that is, it may provide a defense subject to a "reservation of rights." (*Blue Ridge Ins. Co. v. Jacobsen*, *supra*, 25 Cal.4th at p. 497.) If the insurer adequately reserves its right to assert noncoverage defenses later, it meets its obligation to furnish a defense but will not be bound by a judgment against the insured for which no coverage is provided under the policy. (*Id.* at pp. 497-498.) "[T]he insurer has an incentive to reserve a broad spectrum of coverage defenses in order to preserve its right to limit its obligation to indemnify to covered claims." (*Swanson*, *supra*, 219 Cal.App.4th at p. 1162.)

"When an insurer undertakes defense of its insured, an attorney selected by the insurer provides dual representation to the insured and the insurer. An insurer that owes 'a duty to defend an insured, arising because there exists a potential for liability under the policy, "has the right to control defense and settlement of the third party action against its insured, and is ... a direct participant in the litigation." [Citations.] The insurer typically hires defense counsel who represents the interests of

12

both the insurer and the insured.  [Citations.]  In this "usual tripartite relationship existing between insurer, insured and counsel, there is a single, common interest shared among them. Dual representation by counsel is beneficial since the shared goal of minimizing or eliminating liability to a third party is the same." ' " (*Swanson, supra,* 219 Cal.App.4th at p. 1162; accord, *Simonyan v. Nationwide Ins. Co. of America* (2022) 78 Cal.App.5th 889, 896 (*Simonyan*).)

If, however, the insurer's reservation of rights creates a conflict of interest between the insurer and its insured, the benefits of dual representation give way, and the insurer must provide the insured with independent counsel.  (*Swanson, supra,* 219 Cal.App.4th at pp. 1162-1163; see *Cumis, supra,* 162 Cal.App.3d at pp. 364-365, 375.)  "[I]n such cases, the 'insurer may be subject to substantial temptation to shape its defense so as to place the risk of loss entirely upon the insured' [citation], and "[n]o matter how honest the intentions, counsel cannot discharge inconsistent duties.' " (*Centex Homes v. St. Paul Fire & Marine Ins. Co.* (2015) 237 Cal.App.4th 23, 31.)  Because this rule was first identified in *Cumis, supra,* such independent counsel is often referred to as "*Cumis* counsel."  (See *Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.* (2015) 61 Cal.4th 988, 992 (*Hartford Casualty*); *Nede Mgmt. Inc. v. Aspen American Ins. Co.* (2021) 68 Cal.App.5th 1121, 1133 (*Nede Mgmt.*).)

The Legislature codified (with clarifications) the *Cumis* rule in 1987 by enacting section 2860.  (*Hartford Casualty, supra,* 61 Cal.4th at p. 994, fn. 4; *Simonyan, supra,* 78 Cal.App.5th at p. 896 [" 'section 2860 … " 'clarifies and limits' " the rights and responsibilities of insurer and insured as set forth in *Cumis*' "].) The statute provides that "[i]f the provisions of a policy of

13

insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel." (§ 2860, subd. (a); see *Nede Mgmt.*, *supra*, 68 Cal.App.5th at p. 1133 ["section 2860 creates a right for an insured to obtain independent counsel at the insurer's expense whenever their competing interests create an ethical conflict for the insurer-appointed counsel"].)

Section 2860, subdivision (b), states that a conflict of interest "does not exist as to allegations or facts in the litigation for which the insurer denies coverage." Further, the right to independent counsel "is not triggered simply because an insurer defends under a reservation of rights." (*Hartford Casualty*, *supra*, 61 Cal.4th at p. 1003; see *Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1421 ["a conflict of interest does not arise every time the insurer proposes to provide a defense under a reservation of rights"]; *Blanchard v. State Farm Fire & Casualty Co.* (1991) 2 Cal.App.4th 345, 350 ["not every reservation of rights creates a conflict of interest requiring appointment of independent counsel"].) "It depends upon the nature of the coverage issue, as it relates to the issues in the underlying case." (*Blanchard*, at p. 350.)

Section 2860, subdivision (b), provides that a disqualifying conflict of interest "may exist" where "an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim." (See *Gafcon, Inc. v. Ponsor & Associates*,

14

*supra*, 98 Cal.App.4th at p. 1421.) " ' "It is only when the basis for the reservation of rights is such as to cause assertion of factual or legal theories which undermine or are contrary to the positions to be asserted in the liability case that a conflict of interest sufficient to require independent counsel, to be chosen by the insured, will arise." ' " (*Centex Homes v. St. Paul Fire & Marine Ins. Co.* (2018) 19 Cal.App.5th 789, 798; see *McGee v. Superior Court* (1985) 176 Cal.App.3d 221, 226 ["The crucial fact in *Cumis* … was that the insurer's reservation of rights on the ground of noncoverage was based on the nature of the insured's conduct, which as developed at trial would affect the determination as to coverage."].) Where " 'the reservation of rights is based on coverage disputes which have nothing to do with the issues being litigated in the underlying action, there is no conflict of interest requiring independent counsel.' " (*Federal Ins. Co. v. MBL, Inc.* (2013) 219 Cal.App.4th 29, 42 (*Federal Ins. Co.*); accord, *Nede Mgmt.*, *supra*, 68 Cal.App.5th at p. 1133 [" 'California law is settled that "there is no entitlement to independent counsel where the coverage issue is ' "independent of, or extrinsic to, the issues in the underlying action" ' " ' "].)

While an insurer must provide a defense to its insured "if the complaint might be amended to give rise to a liability that would be covered under the policy" (*Montrose Chemical*, *supra*, 6 Cal.4th at p. 299), an insurer must provide independent counsel only where there exists an actual conflict of interest, not merely a theoretical or potential one (*Swanson*, *supra*, 219 Cal.App.4th at p. 1164). To be disqualifying and trigger the duty to pay for independent counsel, the conflict of interest must be " ' "significant, not merely theoretical, actual, not merely potential." ' " (*Ibid.*; accord, *Centex Homes v. St. Paul Fire &*

15

*Marine Ins. Co., supra,* 19 Cal.App.5th at p. 798.) "Alleging 'anticipated circumstances' that 'have not occurred yet in the underlying litigation' is insufficient to state a claim that independent counsel is required." (*Simonyan, supra,* 19 Cal.App.5th at p. 898.)

C.      *Breach of Contract*

Plaintiffs argue the trial court erred in granting Truck summary judgment. They do not contend a triable issue of material fact exists but instead assert the undisputed facts show Truck breached the policy by failing to provide them with independent counsel to defend against Mousa's cross-complaint in the collection action. Plaintiffs are incorrect.

Truck moved for summary judgment on the ground that Mousa's claims of fraud (as to the Dows) and Labor Code violations (as to IPN) were not covered under the policy because Mousa did not seek to recover damages for any bodily injury, property damage, or personal and advertising injury. Truck thus contended it did not have a duty to defend, much less a duty to provide independent counsel. Plaintiffs did not dispute that Mousa's cross-complaint did not include a cause of action seeking damages covered by the policy, but they argued Truck still had duties to defend and to provide independent counsel.

Plaintiffs argue Truck had a duty both to defend them and to provide them independent counsel based on a potential conflict of interest that existed because the allegations of Mousa's cross-complaint left open the reasonable possibility that she could amend her cross-complaint to add a covered claim. They assert Mousa could have amended her cross-complaint to add claims seeking recovery for injuries based on her allegations that plaintiffs treated her like a hostage and slave and caused her to

16

suffer joint and back pain from being forced to carry heavy objects. But even if (as the trial court found) Truck had a duty to defend plaintiffs because Mousa may have been able to amend her cross-complaint to allege a covered claim (*Montrose Chemical*, *supra*, 6 Cal.4th at p. 299), Truck had a duty to provide independent counsel only if an *actual* conflict of interest existed (*Swanson*, *supra*, 219 Cal.App.4th at p. 1164). None existed.

While Truck agreed to defend plaintiffs against Mousa's cross-complaint because her allegations created a "potential for coverage" for bodily injury and personal and advertising injury, the claims Mousa actually alleged—fraud and Labor Code wage-and-hour violations—qualified as neither and were not covered under the policy. Under those circumstances, Truck had no duty to provide plaintiffs with independent counsel because there was no actual conflict of interest. Perhaps Mousa *could have* amended her cross-complaint to add a covered claim based on the allegations that gave rise to a potential for coverage. But until she did so, there existed only a theoretical or potential conflict of interest, which did not trigger Truck's duty to provide independent counsel.

Regardless of whether plaintiffs were found liable for damages on Mousa's fraud and Labor Code claims—the only two claims in the cross-complaint—Truck was not obligated to provide coverage under the policy. Therefore, Truck's interest was never in conflict with plaintiffs', and a duty to provide plaintiffs with independent counsel never arose. (Civ. Code, § 2860, subd. (b) ["a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage]; accord, *Hartford Casualty*, *supra*, 61 Cal.4th at p. 1003; see also *Long v. Century Indemnity Co.* (2008)

17

163 Cal.App.4th 1460, 1471 [conflict between insured and insurer exists only to the extent that "if liability is found, their interests diverge in establishing the basis for that liability"].)

Plaintiffs make several arguments that Truck's specific reservations of rights created a conflict of interest. First, they argue that a conflict existed because coverage would differ depending on whether Mousa was found to be an employee or an independent contractor and whether any damages arose from an "occurrence" within the meaning of the policy. Truck reserved its rights to deny coverage on these issues.[5] Plaintiffs contend appointed counsel were thus able to control coverage issues because appointed counsel could seek to "ensure that the trier of fact found that [Mousa] was [plaintiffs'] employee and not an independent contractor" and engineer a finding there had been no "occurrence" within the meaning of the policy.

However, these issues would become relevant only if Mousa amended her cross-complaint to allege claims that could trigger coverage under the policy. Because Mousa's fraud and Labor Code claims were not covered under the policy, applying these coverage limitations to those claims would never be necessary. In other words, the limitations were " ' " ' "independent of, or

_____

[5]     The policy excluded coverage for (1) bodily injury to an employee of the insured arising out of and in the course of employment by the insured and (2) bodily injury and personal injury arising out of the insured's employment-related practices. The policy defined "occurrence" as "an accident" and provided coverage for "bodily injury" and "property damage" that "is caused by an 'occurrence' that takes place in the 'coverage territory.' " In its initial reservation of rights letters, Truck cited these exclusions and limitations in reserving its right to deny coverage.

18

extrinsic to, the issues in the underlying action," ' " ' " and Truck's reservation of rights to apply the limitations did not create a conflict requiring independent counsel. (*Nede Mgmt.*, *supra*, 68 Cal.App.5th at p. 1133; see *Federal Ins. Co.*, *supra*, 219 Cal.App.4th at p. 42 [no conflict of interest where " 'the reservation of rights is based on coverage disputes which have nothing to do with the issues being litigated in the underlying action' "]; *McGee v. Superior Court, supra*, 176 Cal.App.3d at pp. 227-228 [no conflict of interest shown where reservation of rights under policy exclusion "not founded on the possibility that coverage will be determined or affected by the nature of [the insured's] conduct at trial"].)

Finally, we reject plaintiffs' contention that Truck employees' internal communications constitute binding admissions that Truck had a duty to provide independent counsel. "It is well settled that the interpretation of an insurance policy is a *legal* rather than a *factual* determination [citations]. Consistent therewith, it has been held that opinion evidence is completely irrelevant to interpret an insurance contract." (*Chatton v. National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 846, 865.) "Without more, writings or memos by insurance company personnel venturing their opinions as to whether a defense should be afforded do not constitute 'admissions' of a defense duty." (*Quan v. Truck Ins. Exchange* (1998) 67 Cal.App.4th 583, 601-602.) Thus, as a matter of law, Truck employees' internal communications do not constitute evidence to establish plaintiffs' right to independent counsel. (See *id.* at p. 602 ["The insureds in this case improperly seek to substitute insurance company employee musings concerning the defense duty decision for actual facts that might demonstrate the

19

potential for covered liability.  The fact that insurance company employees may have questioned, in writing, whether denial of a defense obligation was proper based on the facts cannot demonstrate that those facts gave rise to potentially covered liability.  As a matter of law they did not."].)

The duty to provide an insured with independent counsel arises only where a disqualifying conflict of interest exists. (§ 2860, subds. (a)-(b); *Hartford Casualty*, *supra*, 61 Cal.4th at p. 1003; *Swanson*, *supra*, 219 Cal.App.4th at pp. 1163-1164; *Federal Ins. Co.*, *supra*, 219 Cal.App.4th at pp. 41-42.)  In the absence of such a conflict, Truck had no duty to provide plaintiffs with independent counsel.  Accordingly, it was entitled to summary judgment on plaintiffs' breach of contract claim.[6]

D.    *Breach of Implied Covenant of Good Faith and Fair Dealing and Claim for Punitive Damages*

Plaintiffs concede their cause of action for breach of the implied covenant of good faith and fair dealing fails without a viable breach of contract claim.  "The covenant of good faith and fair dealing 'is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement.'  [Citation.]  Absent an underlying contractual right, 'the implied covenant has nothing upon which to act as a

---

[6]    Because we conclude Truck did not have a duty to provide plaintiffs with independent counsel, we need not reach the alternative ground for summary judgment that plaintiffs breached the contract by refusing to allow appointed counsel to participate in the defense and thus are precluded from pursuing their own breach of contract claim.

20

supplement, and "should not be endowed with an existence independent of its contractual underpinnings." ' " (*Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1469.) As discussed, Truck was entitled to summary judgment on the breach of contract cause of action because it did not breach the insurance contract in refusing plaintiffs' request for independent counsel. "Because there was no breach of contract, there was no breach of the implied covenant." (*Everett v. State Farm General Ins. Co.* (2008) 162 Cal.App.4th 649, 663; accord, *Behnke*, at p. 1470.)

Finally, because summary judgment was properly granted in Truck's favor on the cause of action for bad faith, it follows there is no basis for an award of punitive damages. (*569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 429, fn. 3 ["there is no separate cause of action for punitive damages"; rather, "a claim for punitive damages is merely an additional remedy that is dependent on a viable cause of action"].)

## DISPOSITION

The judgment is affirmed. Truck is entitled to its costs on appeal.


STONE, J.

We concur:



SEGAL, Acting P. J.                    FEUER, J.


21